UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA WASHBURN,<br><br>    Plaintiff,<br><br>    v.<br><br>PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | Case No. 15-cv-04009-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 18 |

Defendant Prudential Insurance Company of America moves to dismiss plaintiff Gina Washburn's complaint for failure to state a claim. On November 20, 2015, the Court heard arguments on defendant's motion. For the reasons set forth below, the Court GRANTS defendant's motion to dismiss plaintiff's complaint. Plaintiff is given leave to file an amended complaint by **December 11, 2015**. The case management conference scheduled for December 4, 2015 is rescheduled for January 15, 2015 at 2:30 p.m..

**BACKGROUND**

The following allegations are taken from plaintiff's first amended complaint ("FAC"):

Plaintiff Gina Washburn submitted a signed application for life insurance to defendant Prudential Life Insurance Company. Dkt. No. 13, FAC ¶ 12. Plaintiff alleges that "the application did not authorize Prudential to charge compound interest on the balances due on policy and/or premium loans, nor did it even disclose that Prudential might do so." *Id*.

On November 13, 1989, defendant issued a life insurance policy (the "Policy") to plaintiff. *Id*. Plaintiff never signed the Policy. *Id*. ¶ 13. The Policy contains a provision regarding policy and premium loans which states,

> We charge interest daily on any loan. Interest is due on each contract anniversary or when the loan is paid back, whichever comes first. If interest is not paid when due, it becomes part of the loan. Then we start charging interest on it too.

*Id.*

Sometime after the issuance of the Policy, defendant provided plaintiff "a loan secured by the cash value and death benefit value of the Policy." *Id.* ¶ 14. Defendant charged compound interest on this loan. *Id.* ¶ 15. Plaintiff alleges that she "never signed any agreement authorizing Prudential to charge her compound interest." *Id.*[1]

Plaintiff originally filed this lawsuit in state court as a putative class action. Defendant removed the action pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453(d). The FAC alleges four claims based on the charging of compound interest: (1) declaratory relief; (2) Unfair Competition Law; (3) Initiative Measure, Stats. 1919, p. lxxxiii, §§ 2-3 (codified in Civil Code §§ 1916−2, 1916−3); and (4) unjust enrichment and money had and received. The FAC alleges that "[a]ll of these causes of action arise from defendant's pattern and practice of charging compound interest on life insurance policy and premium loans without a written agreement signed by the borrower providing for such compounding." FAC ¶ 1. Now before the Court is defendant's motion to dismiss plaintiff's first amended complaint for failure to state a claim.

---

[1] The parties dispute whether plaintiff accepted the terms of the Policy, including the compound interest term. Pursuant to California Insurance Code § 10127.9, defendant argues that plaintiff accepted all of the terms because the Policy contained a right-to-cancel clause and plaintiff never canceled the Policy. Dkt. No. 18 at 16; Defendant's Request for Judicial Notice, Dkt. No. 18-1, Ex. B. Defendant also submitted a Supplemental Request for Judicial Notice for copies of four loan checks purportedly signed by plaintiff. Dkt. No. 24-1. Above the signature line in small print, the loan check states, "By endorsing this check, YOU, the payee(s): . . . (2) agree that INTEREST is charged on this LOAN at the contractual rate(s); (3) agree that INTEREST NOT PAID when due will be ADDED to the LOAN amount and the INTEREST charged on it will be at the same rate(s) as the loan itself; . . . ." *Id.* Plaintiff opposes this Supplemental Request for Judicial Notice, arguing that the documents are not incorporated by reference in the complaint and that there are "numerous evidentiary issues" about the documents. Dkt. No. 25 at 1-2. The evidentiary issues, plaintiff contends, include a lack of admissible evidence authenticating or identifying the documents, and no evidence that "these documents comprise the *only* 'loan checks' that plaintiff received or represent the only loans that Prudential made to her." *Id.* at 2 (original emphasis). Plaintiff acknowledges that three of the four checks contain her signature—one of the checks is illegible. *Id.* at 2 n.1.
   Although the Court is concerned that, as a factual matter plaintiff may have agreed to the compound interest provision, the Court cannot resolve factual disputes at the pleadings stage.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.    Claim for Violation of the 1918 Initiative (Claim Three)**

Plaintiff alleges that defendant violated Initiative Measure, Stats. 1919, p. lxxxiii (the "1918 Initiative"), which is codified in California Civil Code § 1916−1 through § 1916−5. In particular, plaintiff claims that defendant violated the prohibition on charging compound interest "unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith." Cal. Civ. Code § 1916−2. Defendant argues that, as an incorporated admitted

3

1   insurer, it is exempt from entirety of the Usury Law[2] under the California Constitution and the
2   California Insurance Code. Plaintiff responds that the exemption extends only to the 1918
3   Initiative's provisions setting the maximum rate of interest, not the disclosure and consent
4   requirements for compound interest. This dispute turns solely on statutory interpretation.

### A. Principles of Statutory Interpretation

When interpreting statutes, a court should "aim 'to ascertain the intent of the enacting legislative body so that [it] may adopt the construction that best effectuates the purpose of the law.'" *Klein v. United States*, 50 Cal.4th 68, 77 (Cal. 2010) (quoting *Hassan v. Mercy Am. River Hosp.*, 31 Cal.4th 709, 715 (Cal. 2003)). The first step of statutory interpretation is to look "to the words of the statute 'because the statutory language is generally the most reliable indicator of legislative intent.'" *Id.* (quoting *Hassan*, 31 Cal.4th at 715). If the statutory language is ambiguous or does not demonstrate its intended meaning, courts then look to the "statute's legislative history and the historical circumstances behind its enactment." *Id.* Lastly, courts "may consider the likely effects of a proposed interpretation because where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." *Id.* (internal quotation marks and citation omitted). It is important to apply these rules of statutory construction in order. *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1396 (Cal. Ct. App. 2013). Also, the canons of statutory interpretation "apply equally to constitutional provisions." *Indep. Energy Producers Ass'n, Inc. v. State Bd. of Equalization*, 125 Cal. App. 4th 425, 437 (Cal. Ct. App. 2004).

### B. Statutory Language of the 1918 Initiative and the Exemption Under the California Constitution

The 1918 Initiative regulates interest rates and the requirements for charging compound

---

[2] Although California Civil Code § 1916−5 states that it may be referred to as the Usury Law, this Court uses the term to describe both the 1918 Initiative and the constitutional usury provisions, as the California Supreme Court has done. *See Ghirardo v. Antonioli*, 8 Cal.4th 791, 798 n.2 (Cal. 1994) (en banc).

4

interest and interest on interest.  In full, it states:

> No person, company, association or corporation shall directly or indirectly take or receive in money, goods or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods or things in action than at the rate of twelve dollars upon one hundred dollars for one year; and in the computation of interest upon any bond, note, or other instrument or agreement, *interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith*. Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest and no action at law to recover interest in any sum shall be maintained and the debt can not be declared due until the full period of time it was contracted for has elapsed.

Cal. Civ. Code § 1916−2 (emphasis added).

Article XV § 1[3] of the California Constitution, adopted after the 1918 Initiative, also contains caps on interest rates, and proscribes the collection of other compensation that exceeds the authorized interest amount, creates exempt classes, and vests authority in the California Legislature over exempt classes.  It provides:

> The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest:
>
> (1) For any loan or forbearance of any money, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, at a rate not exceeding 10 percent per annum; provided, however, that any loan or forbearance of any money, goods or things in action the proceeds of which are used primarily for the purchase, construction or improvement of real property shall not be deemed to be a use primarily for personal, family or household purposes; or
>
> (2) For any loan or forbearance of any money, goods, or things in action for any use other than specified in paragraph (1), at a rate not exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act as now in effect or hereafter from time to time amended . . . .
>
> No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more

---

[3] At the time of its adoption, the constitutional provision was numbered Article XX § 22. In 1976, it was re-numbered Article XV § 1.  For purposes of clarity, the provision is referred to in this order by its current number.

5

> than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.
>
> *However, none of the above restrictions shall apply to any obligations of, loans made by, or forbearances of, . . . any other class of persons authorized by statute*, or to any successor in interest to any loan or forbearance exempted under this article, nor shall any such charge of any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting or as connected with the rate of interest hereinbefore fixed. *The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonuses, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action.*
>
> . . . .
>
> The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith.

Cal. Const., art. XV, § 1 (emphasis added).

The language of Article XV provides that it supersedes the 1918 Initiative when the provisions conflict, such as the interest rate limits. However, the 1918 Initiative "remains in full force to the extent it does not conflict with the Constitution." *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 799 n.2 (Cal. 1994) (en banc).

Plaintiff argues that the plain meaning of the words "none of the above restrictions" is unambiguous and supports her position that the exemption does not apply to the 1918 Initiative's disclosure and consent requirement with respect to the compounding of interest. The "above restrictions" in Article XV are (1) limits on maximum interest rates and (2) the prohibition against "charging any fee, bonus, commission, discount or other compensation [to] receive from a borrower more than the interest authorized by this section upon any loan or forbearance . . . ." Cal. Const., art. XV, § 1. Thus, plaintiff contends, the exemption is limited to those two provisions and does not include the 1918 Initiative's consent and disclosure requirements for compound interest.

However, even though Article XV does not include a provision regarding compound interest, it does grant authority to the California Legislature to "in any manner fix, regulate or limit, the fees, bonuses, commissions, discounts or other compensation" that exempt classes may charge "a borrower in connection with any loan." The language is, therefore, ambiguous as to

whether the authority given to the California Legislature over exempt classes conflicts with the 1918 Initiative's disclosure and consent requirement for compound interest as it applies to exempt classes. If the provisions do conflict, then the Court must find that the California Legislature has the sole authority to regulate the charging of compound interest by exempt classes. If the provisions do not conflict, then even exempt classes are subject to the 1918 Initiative's disclosure and consent requirement. Because the language is ambiguous, the Court must look to the provisions' legislative history.

### C. Legislative History of California's Usury Law

In 1918, California adopted by voter initiative a measure regulating interest rates and authorizing remedies for violations of its provisions. Initiative Measure, Stats. 1919, p. lxxxiii. The 1918 Initiative capped interest rates for any loan at twelve percent. Cal. Civ. Code § 1916−2. It also prohibited the charging of compound interest or interest on interest "unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith." *Id.* A person or entity which was charged and paid a sum greater than the maximum authorized interest rate could bring suit for treble damages within one year after payment. Cal. Civ. Code § 1916−3(a). The public policy embodied in the 1918 Initiative, and the Usury Law in general, "is to protect the necessitous, impecunious borrower who is unable to acquire credit from the usual sources and is forced by his economic circumstances to resort to excessively costly funds to meet his financial needs." *Roes v. Wong*, 69 Cal. App. 4th 375, 381 (Cal. Ct. App.1999) (McDonald, J. concurring) (citing 4 Miller & Starr, California Real Estate (2d ed. 1989), § 10:4).

In 1934, the ratification of California Constitution Article XX § 22 [now Article XV § 1] amended the 1918 Initiative.[4] The first paragraph of Article XX § 22 lowers the maximum interest rate from twelve percent to ten percent. *See Penziner v. W. Am. Finance Co.*, 10 Cal.2d 160, 172 (Cal. 1937). The second paragraph prohibits lenders from charging fees or other

---

[4] As a voter initiative, the 1918 Initiative may be amended or repealed only through a vote of the electorate or a constitutional amendment. Cal. Const., art. II, § 10; *see also Carter v. Seaboard Finance Co.*, 33 Cal.2d 564, 579 (Cal. 1949).

compensation on a loan that exceeds the permissible interest amount. *Id.* The third paragraph provides an exemption to "the above restrictions" for building and loan associations, industrial loan companies, credit unions, pawnbrokers, personal property brokers, certain banks, and some nonprofit cooperative associations. *Id.* It also vests authority in the California Legislature to "prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonus, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan[.]" *Id.* at 172-73.

In 1976, Article XX § 22 was renumbered to Article XV § 1. In 1979, Article XV was amended to its present form, extending the exempt classes to, *inter alia*, those "authorized by statute." The language describing the California Legislature's authority to regulate the exempt classes did not change in any significant way.[5] *Compare Penziner*, 10 Cal.2d at 172-73 *with* Cal. Const., art. XV, § 1.

In 1981, the California Insurance Code was amended to "create[] and authorize[] incorporated insurers as an exempt class of persons pursuant to Section 1 of Article XV of the Constitution." Cal. Ins. Code § 1100.1. In 1982, the California Legislature enacted Insurance Code § 1239, which provides that "[n]o other provision of law shall apply to policy loan interest rates unless made specifically applicable to these rates."

Evaluating the effect of the 1934 constitutional amendment on the 1918 Initiative, the California Supreme Court stated, "Except as to the reduction of interest . . . [the first] paragraph is substantially similar to the first part of section 2 of the [1918 Initiative]. The many other provisions of section 2 . . . find no counterpart in the constitutional amendment." *Penziner*, 10 Cal.2d at 172. Additionally, *Penziner* found that, apart from the reduction of the interest rate cap, "there is nothing in the constitutional provision to indicate that it was intended thereby to affect the applicability of the [1918 Initiative] provisions *at least in so far as they apply to the nonexempt classes of lenders*[.]" *Id.* at 173 (emphasis added). Holding that the 1934 amendment did not

---

[5] The only difference in wording was to change "bonus" to "bonuses."

8

1  repeal the entire 1918 Initiative, the court stated,

> All that the constitutional amendment does is to reduce the maximum permissible rate . . .; to exempt certain enumerated classes of lenders from *certain* of its provisions; and to place in the legislature a certain degree of control over the fixing of charges made by the exempted groups. In its own sphere of operation, and in so far as it establishes different rules from those found in the [1918 Initiative], the constitutional provision is supreme—but that is the extent of its operation.

*Id.* at 177 (emphasis added).

The California Supreme Court further addressed the 1934 constitutional amendment in *Carter v. Seaboard Finance Co.*, 33 Cal.2d 564 (1949). Looking to the ballot statement and an Assembly report, the court found that the purpose of the amendment was "to free the Legislature from the restraints imposed by inflexible usury provisions so that interest and charges more appropriate to business conditions peculiar to each of the exempted classes could be established." *Carter*, 33 Cal.2d at 582. Further, the court held that "until the Legislature exercises the power granted to it by the amendment to regulate the business of lenders in a manner appropriate to each exempted class, the class not so governed by legislation is subject to no restriction on interest rates or charges." *Id.* Accordingly, the court noted that "the regulation of the business of [exempt classes], including their interest and charges, is entirely within the control of the Legislature." *Id.*

Plaintiff relies heavily on *Penziner* to argue that the 1918 Initiative's disclosure and consent requirements as to compound interest apply to exempt classes. In particular, plaintiff emphasizes the *Penziner* court's statement that the constitutional amendment only "exempt[s] certain enumerated classes of lenders from *certain* of its provisions." *Penziner*, 10 Cal.2d at 177 (emphasis added). In the sentence immediately after, *Penziner* states that to the extent that the California Constitution and the 1918 Initiative conflict, the California Constitution "is supreme—but that is the extent of its operation." *Id.* In this context, the exemption from "certain provisions" should be read to mean exemption from provisions that conflict with the California Constitution. *Penziner*, however, does not address whether the compound interest provision conflicts with the constitutional amendment's grant of authority in the Legislature over exempt classes.

Plaintiff also relies on *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 21 Cal.3d 365 (Cal. 1978) (*McConnell I*) and *McConnell v. Merrill Lynch, Pierce, Fenner & Smith,*

9

*Inc.*, 33 Cal.3d 816 (Cal. 1983) (*McConnell II*). In *McConnell I*, the plaintiffs brought a class action for two claims: (1) unlawful charge of compound interest without a clear agreement, and (2) charge of an interest rate above the ten percent maximum before defendant became exempt under the Usury Law. 21 Cal.3d at 368-69. It is unclear from the decision whether the plaintiffs' claim regarding compound interest arose during and was limited to the time period before the defendant became exempt. However, neither party appeared to dispute that the defendant was subject to the compound interest provision. In *McConnell II*, the claim for usurious interest had been dismissed and the court evaluated the sufficiency of the agreement for compound interest, but the court never discussed the exemption to the Usury Law. 33 Cal.3d 816. The Court finds that *McConnell I* and *McConnell II* are not probative of the question before this Court because it appears that the *McConnell* defendant was not exempt during the time period covered by the complaint.

The *Carter* decision sheds more light on the intent behind the grant of authority over the exempt classes to the California Legislature. *Carter* found that the regulation of exempt classes' businesses is "entirely within the control of the Legislature," which means that the authority granted to the California Legislature to "in any manner fix, regulate or limit, the fees, bonuses, commissions, discounts or other compensation" charged by exempt classes includes the ability to charge compound interest. *See Carter*, 33 Cal.2d at 582; Cal. Const., art. XV, § 1. Thus, the 1918 Initiative's disclosure and consent requirement conflicts with the California Constitution and the California Constitution supersedes, and the exemption applies to the 1918 Initiative Measure's disclosure and consent requirement for compound interest.

This finding is consistent with the only California court decision addressing the issue of whether the exemption applies to the 1918 Initiative's compound interest provision. *See Thomason v. Bateman Eichler, Hill Richards, Inc.*, 245 Cal. Rptr. 319 (1988) (depublished opinion).[6] In

---

[6] The parties dispute whether the Court may consider a depublished opinion as persuasive authority. The Court finds that the fact that *Thomason* was depublished is a factor to be considered when evaluating the persuasiveness of that decision, but that the Court may still examine that decision as relevant authority. *See Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value."); *McSherry v. Block*, 880 F.3d 1029, 1052 (9th Cir. 1989) ("While the depublication order may constitute a factor as to whether we are bound by the Appellate Department's construction, we do not necessarily find that factor decisive.").

*Thomason*, the plaintiffs borrowed "portions of the purchase price for securities acquired for their accounts" from the defendant, a licensed securities broker-dealer. *Id.* at 319. The defendant charged compound interest for the amount borrowed. *Id.* The plaintiffs sued for violation of Civil Code § 1916−2, arguing that the compound interest provisions applied to the defendant, a member of an exempt class. *Id.* at 320. Looking the constitutional amendments and the sparse case law on the Usury Law, the court held that a "conclusion that [the defendant] was bound by the [1918 Initiative's] compound interest requirements would be inconsistent with the Legislature's authority to regulate 'in any manner' the interest charged by exempt lenders." *Id.* at 323.

Although not binding on this Court, the *Thomason* holding is a reasonable interpretation of the exemption. The authority vested in the California Legislature includes the regulation of "fees, bonuses, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan[.]" Cal. Const., art. XV, §1. In light of the legislative history provided in *Carter*, the phrase "in any manner fix, regulate or limit . . . other compensation" reasonably includes the regulation of compound interest. Thus, the California Constitution vests in the California Legislature the sole authority to regulate the charging of compound interest by exempt classes. The exemption, therefore, applies to the entirety of California Civil Code § 1916−2.

### D. Defendant is Exempt from the Usury Law

The California Insurance Code provides that "incorporated admitted insurers" are exempt under Article XV § 1. Cal. Ins. Code § 1100.1. Defendant is an incorporated admitted insurer and, therefore, is exempt. *See* Defendant's Request for Judicial Notice, Dkt. No. 18-1, Ex. A.[7] Plaintiff does not dispute that defendant falls within an exempt class. Because the exemption extends to the entirety of California Civil Code § 1916−2, plaintiff cannot state a claim upon which relief may be granted against defendant for violation of § 1916−2. Accordingly, the Court dismisses this claim without leave to amend.

---

[7] The Court grants the Defendant's Request for Judicial Notice, with the exception of Exhibit C. *See* Dkt. No. 18-1.

11

### II. Claims for Declaratory Relief, Unfair Competition Law, and Unjust Enrichment (Claims One, Two, and Four)

Plaintiff's three remaining claims are premised on defendant's alleged violation of California's Usury Law. Claim One seeks a declaration that the policy and loans made by prudential are subject to the 1918 Initiative's compound interest provision. Claim Two alleges a violation of California's Unfair Competition Law because the charging of compound interest constitutes an "unlawful" business act or practice. *See* Cal. Bus. & Prof. Code § 17200 *et seq*. Claim Four alleges that defendant is unjustly enriched by unlawfully receiving compound interest. However, because defendant is exempt from the entirety of California Civil Code § 1916−2, plaintiff's remaining claims also fail to state a claim upon which relief may be granted and are dismissed without leave to amend.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss the claims alleged in the FAC without leave to amend. If plaintiff wishes to allege different claims based on the same facts, plaintiff may do so by filing a second amended complaint no later than **December 11, 2015**.

**IT IS SO ORDERED**.

Dated: November 24, 2015

SUSAN ILLSTON
United States District Judge